IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-01042-TPO

JOSE ANTONIO TIA EXPOSITO,

Petitioner,

v.

TODD LYONS, Acting Director, U.S. Immigrations and Customs Enforcement,
MADISON SHEAHAN, Deputy Director, U.S. Immigrations and Customs Enforcement, and
JUAN BALTASAR, Warden, Denver Contract Detention Facility,

Respondents.

---

**ORDER**

---

**Timothy P. O'Hara, United States Magistrate Judge.**

This matter is before this Court for consideration of Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF 1]. Pursuant to 28 U.S.C. § 636(c), the Parties have consented to this Court's jurisdiction for all purposes. ECFs 15 & 16. Having reviewed the Application [ECF 1], Respondents' Response to Order to Show Cause [ECF 14], and Petitioner's "Response to Respondent's Order to Show Cause" [ECF 24], which the Court construes as his Reply, and having reviewed the operative case law, the Court **grants** the Application and orders Petitioner's immediate release from immigration custody.

**BACKGROUND**

Petitioner is a native and citizen of Cuba. ECF 14-1 ¶ 4 (Declaration of Deportation Officer Grace Miles). On November 2, 2018, he applied for admission into the United States at the Ysleta Port of Entry in Texas and "claimed fear of persecution in Cuba." *Id.* ¶ 5. United States Department of Homeland Security (DHS) "paroled Petitioner into the United States and

processed him for expedited removal" proceedings. *Id.* ¶ 6. On November 4, 2018, he was placed in the custody of United States Immigration and Customs Enforcement (ICE). *Id.* ¶ 8.

Petitioner was referred to United States Citizenship and Immigration Services (USCIS) for a credible fear interview by an asylum officer, and on November 21, 2018, DHS issued a Notice to Appear (NTA) charging Petitioner with "being inadmissible to the United States," initiating removal proceedings under 8 U.S.C. § 1229a. *Id.* ¶¶ 7, 9.

On January 14, 2019, Petitioner appeared before an immigration judge and admitted the allegations and charge in the NTA. ECF 14-1 ¶ 10. The immigration judge sustained the charge of inadmissibility. *Id*. Then, on February 15, 2019, ICE released him from custody. *Id.* ¶ 11.

On June 8, 2022, Petitioner failed to appear at an immigration hearing. ECF 14-1 ¶ 12. The immigration judge conducted the hearing in absentia and ordered Petitioner removed to Cuba. *Id.*

On September 6, 2025, ICE arrested Petitioner in Centennial, Colorado, and subsequently detained him at the Denver Contract Detention Facility. *Id.* ¶ 14. On November 13, 2025, "ICE served Petitioner with a Notice of Removal to Mexico,[1] but he refused to sign the notice." *Id.* ¶ 16. Petitioner was transferred to Arizona on November 13, 2025 "for staging for removal to Mexico," but was quickly returned to Denver after he claimed fear of removal to Mexico. *Id.* ¶¶ 17-19.

---

[1] Respondents do not attach the document to their brief, but based on Respondents' description, the Court presumes it is similar to the document referenced in *Martinez v. Warden*, No. 3:26-cv-1363-JEP-SJH, 2026 WL 1858268, at *3 (M.D. Fla. June 26, 2026) (describing the documents that petitioner refused to sign as "notices to him about ICE's intention to remove him to Mexico and documents advising him of his requirements to assist ICE and the consequences he faces for not doing so, not applications for travel documents or forms that would otherwise appear to assist in his removal.")

On November 25, 2025, ICE served Petitioner with a Form I-229 (Warning for Failure to Depart) and a Notice of File Custody Review. On December 8, 2025, ICE conducted a Post Order Custody Review and determined Petitioner did not satisfy the criteria for release because he failed to demonstrate he will not pose a danger to the community or pose a significant risk of flight pending removal. *Id.* ¶¶ 20-21; *see also* ECF 1 at 16-17.

On January 26, 2026, the USCIS conducted a third country screening interview with Petitioner and determined he failed to demonstrate a credible fear of persecution or torture in Mexico. *Id*. ¶ 23. On March 11, 2026, ICE served Petitioner with a Notice of Removal to Mexico, but he again refused to sign the document. *Id.* ¶ 25.

On an unknown date, Respondents learned that the "government of Cuba has declined to accept Petitioner for repatriation." *Id.* ¶¶ 26, 28. As a result, ICE continues to pursue Petitioner's removal to a third country, and Respondents claim that "ICE would be able to remove Petitioner to Mexico if Petitioner complied, including by signing the Notice of Removal." *Id*. ¶ 28.

Petitioner, acting pro se, initiated this action on March 13, 2026. ECF 1. He remains in custody and claims his ongoing detention is unlawful because he is unlikely to be removed in the reasonably foreseeable future in violation of the Due Process Clause of the Fifth Amendment. *Id.* at 7-9. He seeks immediate release as relief. *Id.*

## JURISDICTION AND LEGAL STANDARD

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is

warranted only if Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The individual in custody bears the burden of proving that their detention is unlawful." *Batz Barreno v. Baltasar*, No. 25-cv-03017-GPG-TPO, 2026 WL 120253, at *2 (D. Colo. Jan. 15, 2026) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

It is undisputed that Petitioner is in immigration custody. This Court therefore has jurisdiction under the federal habeas corpus statute, 28 U.S.C. § 2241, to hear his challenge to it. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313, at *2 (D. Colo. Feb. 24, 2026).

## ANALYSIS

### I. Legal Framework for Detention

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). Petitioner entered immigration custody on September 6, 2025, and the 90-day mandatory detention period therefore ended on December 5, 2025.

After the 90-day removal period, ICE has discretion to continue detaining noncitizens

who are subject to a final order of removal. 8 U.S.C. § 1231(a)(6). That detention may not be indefinite, however. Such detention is presumptively reasonable for only six months. *Zadvydas*, 533 U.S. at 701. After that, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* As the length of confinement grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* For Petitioner, the presumptive six-month period ended on March 5, 2026.

**II. Merits of Petitioner's Claim**

The Parties agree that Petitioner is subject to a final order of removal which was entered on June 8, 2022. ECF 1 at 5; ECF 14-1 ¶¶ 12, 15. Therefore, his detention is governed by 8 U.S.C. § 1231.

As of April 16, 2026, the date of Respondents' Response, Petitioner had been detained for over seven months. ECF 14 at 8. Consequently, Petitioner's detention has extended beyond the presumptively reasonable six-month period described in *Zadvydas*. Petitioner therefore bears the initial burden of showing a "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Based on Petitioner's allegations in the Petition, as supplemented by the fact that he has now been detained for *more than 11 months*, he meets that burden and provides the "good reason" required by *Zadvydas*. *See* ECF 1 ¶¶ 15-16 (noting that ICE has retained his passport and that he is "unlikely to be removed in the foreseeable future."); ¶ 25 (arguing that there is not [a] removal agreement between the United States and a [third] country.").

The burden therefore shifts to Respondents to rebut Petitioner's showing. *Zadvydas*, 533

U.S. at 701. In analyzing whether Respondents have met their burden, the Court must consider the guidance provided by the Supreme Court in *Zadvydas* that as the length of post-removal confinement grows, what amounts to the "reasonably foreseeable future" shrinks. *Id*.

The entirety of Respondents' evidence is found in the Declaration of Deportation Officer Grace Miles. ECF 14-1. The Declaration confirms that Petitioner's removal to Cuba is unlikely to occur in the reasonably foreseeable future, if ever. *Id*. ¶ 26 ("The government of Cuba has declined to accept Petitioner for repatriation.") *Id*. ¶ 26. Therefore, in order to prevail, Respondents' must provide sufficient evidence of a significant likelihood of removal in the reasonably foreseeable future to a third country, in this case, Mexico.[2] *See* ECF 14-1 ¶ 16.

In furtherance of their intent to remove Petitioner to Mexico, Respondents initially transferred Petitioner to Arizona to "stage" his removal. ECF 14-1 ¶ 17. However, Petitioner claimed fear of removal to Mexico, which resulted in his transfer back to Denver and the issuance of Form 1-229(a), Warning for Failure to Depart. *Id*. ¶20. Since then, Respondents interviewed Petitioner and determined that he "did not establish that it is more likely than not that he will be persecuted or tortured in Mexico." *Id*. ¶ 23. That was almost seven months ago.

Now, Respondents merely assert that "ICE is pursuing Petitioner's removal to a third country pursuant to 8 U.S.C. § 1231(b)." *Id*. ¶ 27. They also vaguely state that "ICE would be able to remove Petitioner to Mexico if Petitioner complied, including by signing the Notice of Removal." *Id*. ¶ 28. However, Respondents fail to provide the Court with any details beyond these vague assertions. Respondents fail to identify any specific inquiries that were made to

[2] The Court then considers Respondents' alternative argument, that the time limit to remove Petitioner has been suspended under 8 U.S.C. § 1231(a)(1)(C).

Mexican authorities and/or responses were received from those authorities. They fail to provide any dates by which it is expected that Petitioner will be removed or further action will be taken. They fail to attach even a single document to support their plan.

Based on the complete lack of evidence provided by Respondents, the Court finds that Respondents have failed to meet their burden of demonstrating that Petitioner's removal is likely to occur in the reasonably foreseeable future. Courts have found time and time again that Respondents' vague assertions, such as an assertion that "ICE continues to pursue Petitioner's removal to Mexico as a third country," are insufficient to satisfy Respondents' burden. *See Castellano v. U.S. Dep't of Homeland Sec.*, No. 26-cv-00080-PAB, 2026 WL 472732, at *2 (D. Colo. Feb. 19, 2026) (collecting cases); *see also Tran v. Baltazar*, No. 26-cv-00940-CNS, 2026 WL 764002, at *3 (D. Colo. Mar. 18, 2026) ("[T]he mere chance of removal within an unspecified period of time is not the same as a significant likelihood of removal in the reasonably foreseeable future, [and] unsubstantiated assertions that the government will pursue removal are insufficient to satisfy Respondents' burden.") (quotation altered).

However, before deciding, the Court must consider Respondents' argument that Petitioner's own efforts justify his continued detention. Specifically, Respondents argue that because Petitioner refused to sign the Notice of Removal on two occasions, ECF 14-1 ¶ 16 (November 13, 2025), ¶ 25 (March 11, 2025), he frustrated Respondents' efforts to remove him,[3]

[3] To the extent that Respondents suggest that Petitioner's claimed fear of removal to Mexico is supportive of their request to suspend the removal period under 8 U.S.C. § 1231(a)(1)(C), the Court rejects such a suggestion. First, the argument is not explicitly made by Respondents and is thus waived. Second, Respondents cite no cases in which courts have found that a noncitizen's claiming fear of removal to a third country would constitute a sufficient basis to suspend the statutory removal period. And third, the court in *Castellano* found exactly the opposite. 2026 WL 472732, at *3 (finding that Petitioner being entitled to notice and opportunity to seek protection

thus providing an alternative basis for the denial of his Petition. According to Respondents, "Petitioner's continued detention is a product of his own making." ECF 14 at 8.

Respondents fail to even mention the relevant statute, 8 U.S.C. § 1231(a)(1)(C), in their Response. This statute notes that the initial 90-day detention period to effectuate removal[4] may be suspended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The two cases cited by Respondents, *Riley v. Greene*, 149 F. Supp. 2d 1256 (D. Colo. 2001) and *Robinson v. Terry*, No. CV 11-1142 JH/LAM, 2012 WL 13081894 (D.N.M. May 3, 2012), both relate to a petitioner's failure to provide travel documents, a factual situation that is not present here. In *Riley*, the petitioner admitted that he "refused to assist the INS in completing travel arrangements to Lebanon," a country where he was a citizen. 149 F. Supp. 2d at 1259, 1262. That petitioner's failure to assist in completing travel documents was long-standing. *Id*. at 1262. In *Robinson*, the respondents demonstrated the impact of the petitioner's failure to cooperate on their efforts to remove him. *Id*. at *2 (describing the denial letter received from the Jamaican Consulate based on the lack of evidence of petitioner's citizenship).

Here, Respondents only generally argue that the period of detention should be extended because Petitioner failed "to comply with ICE's removal efforts." ECF 14 at 9. Respondents'

---

from removal because of a fear of removal to a third country would support that his removal is not likely in the reasonably foreseeable future).

[4] The suspension of the removal period only applies if it occurs within the first 90 days. *See* 8 U.S.C. § 1231(a)(1)(C). Therefore, the second alleged refusal by Petitioner to sign the Notice of Removal, having occurred outside the initial 90 days, is irrelevant to the present discussion.

failure to present the supporting documents of Petitioner's alleged failure to comply cuts against the reliability of the Respondents' assertions. *See Tojin-Lox v. Lyons*, No. 26-cv-01868-PAB, 2026 WL 1469200, at *4 (D. Colo. May 26, 2026) (casting respondents' failure to provide document in a negative light).

Even taking Respondents' factual assertions to be true, the relevant question is whether Petitioner's failure to sign the Notice of Removal to a Third Country constitutes an act "to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Numerous cases have addressed this issue recently. While there is some opposition, discussed below, many courts find that a detainee's refusal to sign the Notice of Removal to a Third Country, or other documents provided to the noncitizen by ICE providing notice of rights in the removal process, does not justify suspending the period of detention under 8 U.S.C. § 1231(a)(1)(C). In *Hernandez v. U.S. Immigr. and Customs Enf't*, for example, respondents alleged that petitioner's refusal to sign various immigration forms, include a "Notice of Removal," constituted a refusal "to sign the necessary paperwork to assist ICE to secure his removal." No. 3:26-cv-8-MMH-MCR, 2026 WL 776166, at *2 (M.D. Fla. Mar. 19, 2026) (internal quotation marks omitted). In granting release, the court found that the documents petitioner refused to sign "are notices to [petitioner], not applications for travel documents or forms that would otherwise appear to assist in his removal." *Id.* at *3. In *Abdel-Muhti v. Ashcroft*, respondents went a step further by providing petitioner with a "notice of failure to comply," pursuant to 8 C.F.R. § 241.4, after petitioner failed to sign a form "directing that he assist in his removal by providing information and revealing his true and valid identity." 314 F. Supp. 2d 418, 430 (M.D. Pa. 2004). The court found that the record failed to support a finding that "Petitioner failed to comply with any

specific directive of ICE." *Id*. In *Boza-Rosales v. Blanche*, ICE presented petitioner, a Cuban national, with "paperwork related to his prospective removal to the Republic of El Salvador," which he refused to sign. No. C26-0624 TSZ, 2026 WL 1412456, at *3 (W.D. Wash. May 15, 2026). The court found that "[i]f petitioner's removal to Mexico, El Salvador, or another country other than Cuba was lawful, then respondents would not need petitioner to 'accept' or consent to such removal." *Id*. The court granted the petition and ordered petitioner's immediate release from custody. Other cases have joined the chorus. *See Van Nguyen v. Bondi*, 818 F. Supp. 3d 1235, 1240 (W.D. Wash. Feb. 3, 2026) (respondents failed to show how "Petitioner's alleged lack of cooperation hindered their ability to timely obtain travel documents."); *Mohammad J.B. v. Warden*, No. 1:26-cv-02978-TLN-SCR, 2026 WL 2137754, at *3 (E.D. Cal. Jul. 24, 2026) (finding petitioner did not fail to comply with removal efforts); *Navarro-Maury v. Hermosillo*, No. 26-cv-00333-TMC, 2026 WL 1413166, at *2, 6 (W.D. Wash. May 20, 2026) (ordering petitioner's release despite his refusal to sign the Notice of Intent to Remove to Mexico); *Martinez v. Warden*, No. 3:26-cv-1363-JEP-SJH, 2026 WL 1858268, at *3 (M.D. Fla. June 26, 2026) (finding petitioner's signing of notices advising him of ICE's intent to remove him to Mexico were not required for his removal). Finally, in *Castellano*, U.S. District Judge Philip A. Brimmer granted the petition of a Cuban national who twice refused to sign a Notice of Removal to Mexico. 2026 WL 472732, at *5.

Several courts have found differently, including at least three in this District. *See e.g.*, *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (unpublished); *Khokhwan v. Lyons*, No. 26-cv-00019-NYW, 2026 WL 2194111 (D. Colo. July 30, 2026); *Hernandez Montes v. Ceja*, No. 1:26-cv-01390-CNS, 2026 WL 1469231 (D. Colo. May 26, 2026); *Zayas Rodriguez v.*

*Baltasar*, No. 26-cv-00686-RMR, 2026 WL 1618516 (D. Colo. June 5, 2026). *Abiodun* and *Khokhwan* are easily distinguishable because the petitioners in those cases took more active steps to prevent removal in a way that was more consistent with allowing a suspension of the deportation period under § 1231(a)(1)(C). *See Abiodun*, 264 F. App'x at 729 (petitioner refused to complete an application for a Nigerian passport); *Khokhwan*, 2026 WL 2194111, at *2 (petitioner failed to complete a travel application document). Although closer to the facts of the present case, this Court does not find *Hernandez Montes* and *Zayas Rodriguez* to compel a different result here after considering other case law.

Therefore, consistent with cases mentioned favorably above, the Court finds that Petitioner did not inhibit Respondents from their efforts to remove him in such a way that would allow for a suspension of the 90-day deportation period under 8 U.S.C. § 1231(a)(1)(C). Specifically, Respondents fail to show Petitioner's refusal to sign a Notice prevented them from even pursuing his removal.

As a result, the Court finds that Respondents have failed to rebut Petitioner's showing as to the likelihood of his removal. Petitioner's ongoing detention, therefore, violates his Fifth Amendment right to due process. That Court finds that Petitioner is entitled to habeas corpus relief under *Zadvydas* and grants his Petition.

## **CONCLUSION**

For the reasons stated herein, it is ORDERED that:

1) the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF 1] is **GRANTED**;

   Petitioner shall be released from custody **within 24 hours of this Order.** Should Respondents see the need to impose conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3), those conditions shall be reasonable and limited to what is necessary; and

2) Respondents shall file a Status Report on or before **August 17, 2026**, informing the Court of the status of Petitioner's release and whether any additional proceedings are necessary.

3) Petitioner's Request to Make a Determinative Decision [ECF 18] is **granted**.

4) Respondents shall give Petitioner a copy of this Order either by email or by hand delivery at the time of his release.

DATED at Denver, Colorado, this 13th day of August, 2026.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge